**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| ANTHONY MIMMS, M.D., and MIMMS FUNCTIONAL REHABILITATION, P.C., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 1:15-cv-00970-TWP-MJD |
| CVS PHARMACY, INC., a Rhode Island corporation, | ) ) ) | |
| Defendant. | ) ) ) | |
| _____ | ) | |
| INDIANA ATTORNEY GENERAL, Medicaid Fraud Control Unit, | ) ) ) | |
| Interested Party. | ) ) | |

**ENTRY ON PENDING MOTIONS**

This matter is before the Court on the parties' Cross-Motions for Summary Judgment. On May 20, 2015, Plaintiff Anthony Mimms ("Dr. Mimms") filed a Complaint alleging defamation, tortious interference with contractual relationships and tortious interference with a business relationship against Defendant CVS Pharmacy, Inc., ("CVS"). On June 15, 2016, Dr. Mimms filed a Motion for Partial Summary Judgment on behalf of himself and his business, Mimms Functional Rehabilitation, P.C., ("MFR") (Filing No. 71). On that same date, CVS filed a Cross Motion for Summary Judgment (Filing No. 74). Also pending is a Motion to Strike Certain Defendant's Affirmative Defenses filed by Dr. Mimms, (Filing No. 58), a Motion to Amend Witness and Exhibit Lists filed by CVS (Filing No. 127), and a Motion to Supplement Summary Judgment Record filed by CVS (Filing No. 130). For the following reasons, the Court **denies in part and grants in part** the parties' Cross-Motions for Summary Judgment, **denies** Dr. Mimms' Motion to

Strike, **grants** CVS's Motion to Amend Witness List, and **denies** CVS's Motion to Supplement Summary Judgment Record.

## I.     BACKGROUND

The dispute in this matter surrounds Dr. Mimms' claims that CVS employees at numerous Indiana locations, uttered false and defamatory statements to his patients, causing him to suffer embarrassment, damage to himself and his practice and loss of clients from his pain management practice. Dr. Mimms is a physician who resides in Indianapolis, Indiana. In 2004, Dr. Mimms was licensed with the Indiana Medical Licensing Board. As such, he was licensed and registered to prescribe drugs classified by the United States Drug Enforcement Administration ("DEA") as Schedule I, II, IID, III, IIID, IV and V ("prescriptions"). In November 2013, Dr. Mimms resigned from a practice with Rehabilitation Associates of Indiana ("RAI") and started his own pain management practice, MFR. Thereafter, employees at various CVS stores within the Southern District of Indiana refused to fill prescriptions prescribed by Dr. Mimms.

In late 2013, Cynthia Miller, a patient of Dr. Mimms, traveled to CVS Store #4633 located in Greenfield, Indiana to refill a prescription written by Dr. Mimms. (Filing No. 73-10.) A CVS employee informed Miller that they were not filling prescriptions written by Dr. Mimms because he was under investigation by the DEA. *Id*. Later that same day, Miller returned to the same CVS store with her husband and talked to Richard, a CVS pharmacy manager. *Id*. at 3. Richard repeated that CVS did not fill prescriptions written by Dr. Mimms because he was under DEA investigation. *Id*. at 4.

On June 24, 2014, Terry McIntosh traveled to CVS Store #4633 to gather information regarding narcotic pain medications he had previously taken. (Filing No. 73-4 at 2.) While at the CVS store, Anthony, a CVS pharmacist, stated that CVS does not fill prescriptions for Dr. Mimms.

*Id.* Anthony then compared Dr. Mimms to a pill mill and explained that pill mills are physicians "who just parade patients one after another through their office writing prescriptions. Some get kickbacks, some give them, they over-write the prescriptions too because they get kickbacks." *Id.*

In October 2014, Judith Mason attempted to get a prescription written by Dr. Mimms filled at CVS Store #4633, but a CVS employee informed Mason that they refuse to fill any prescription written by Dr. Mimms. (Filing No. 73-2 at 2.) Mason then traveled to CVS Store #0045 located on Pendleton Pike in Indianapolis. *Id.* There, Alexis Field ("Field"), a CVS pharmacy technician, stated that Dr. Mimms was under investigation by the DEA and that Mason should find another doctor. *Id.* Field admits that she made the statement. (Filing No. 73-3 at 4.)

Kim Petro ("Petro") also informed Dr. Mimms that she went to CVS Store #6645 located in Rushville, Indiana to refill a prescription that he had written. (Filing No. 73-7 at 8.) Dana, a CVS technician, informed Petro that they could not fill prescriptions written by Dr. Mimms because he went to jail and is a bad doctor. *Id.* at 9. Another patient of Dr. Mimms, Jerame Smith ("Smith"), traveled to a CVS store to fill a prescription written by Dr. Mimms, and a CVS pharmacy technician named Jason looked at the prescription, looked over at something on the wall and then informed Smith that he could not fill the prescription because Dr. Mimms was under DEA investigation. (Filing No. 73-9 at 6.) Jason further stated, "well, either they think your doctor is a pill pusher or he doesn't care about his clients or he's a shady doctor." *Id.*

Most recently, Dr. Mimms' patient Deborah Doyle-Blanton ("Blanton") informed Dr. Mimms that, on March 4, 2015, a Caucasian CVS employee with dark hair and a lean build at CVS Store #7541 located in McCordsville, Indiana, stated that Dr. Mimms had been under investigation and arrested for controlled substances, and if he was not arrested then Dr. Mimms would soon be arrested. The employee suggested that Blanton find a new doctor. (Filing No. 73-1 at 2.)

Blanton's brother, David Seeman, who is not Dr. Mimms' patient, also informed Dr. Mimms that a CVS employee at Store #6594 refused to fill a prescription written by Dr. Mimms for Blanton. (Filing No. 73-5 at 2.)  The employee stated that Dr. Mimms' license was revoked and that it was best that Blanton go to another doctor.  *Id.*  Seeman described the CVS employee as a young Caucasian woman.  *Id.* at 6.

On February 10, 2014, Dr. Mimms filed a Consumer Complaint against CVS with the Indiana Attorney General's Office, complaining that CVS stores across Indiana were refusing to fill his patients prescriptions.  (Filing No. 73-11 at 2-3.)  On May 23, 2014, the Indiana Attorney General's Office sent Dr. Mimms a letter stating that it was closing his Complaint against CVS, but provided no other information.  *Id.* at 6.  On November 17, 2014, DEA agent Madeline Kuzma and Amy Andercyk from the Indiana Attorney General's Office visited CVS regarding CVS's refusal to fill Dr. Mimms' prescriptions.  (Filing No. 73-13 at 2.)  The agents asked whether there were other doctors that concerned CVS.  *Id.*  Thereafter, on May 20, 2015, Dr. Mimms filed this action against CVS in Marion Superior Court on behalf of himself and MFR, asserting defamation, tortious interference with contractual relationships, and tortious interference with a business relationship.  (Filing No. 1-2.)  On June 19, 2015, CVS removed the case to federal court.  CVS disputes that its employees made any actionable defamatory statements, and contends that if the employees did make defamatory statements, they are protected by a qualified privilege.  Both parties move for summary judgment.

## II.   <u>LEGAL ANALYSIS</u>

The purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."  *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 106 S. Ct. 1348 (1986).  Under Federal Rule of Civil Procedure

4

56, summary judgment is appropriate only where there exists "no genuine issue as to any material facts and . . . the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56.  In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor."  *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).  "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion."  *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted).  Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial."  *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007) (citation omitted).  "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence."  *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

These same standards apply even when each side files a motion for summary judgment. The existence of cross-motions for summary judgment does not imply that there are no genuine issues of material fact.  *R.J. Corman Derailment Serv., LLC v. Int'l Union of Operating Eng'rs.*, 335 F.3d 643, 647 (7th Cir. 2003).  The process of taking the facts in the light most favorable to the non-moving party, first for one side and then for the other, may reveal that neither side has enough to prevail without a trial. *Id.* at 648.  "With cross-motions, [the Court's] review of the record requires that [the Court] construe all inferences in favor of the party against whom the motion under consideration is made."  *O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 983 (7th Cir. 2001) (citation and quotation marks omitted).

5

### III.   DISCUSSION

Dr. Mimms moves this Court for partial summary judgment on the defamation claim only, arguing that the statements made by CVS are defamatory *per se*.  CVS cross motions for summary judgment, contending that the statements are inactionable opinions, true statements or protected by qualified privilege.  CVS also seeks summary judgement on the tortious interference claims, arguing they fail as a matter of law.

### A.   Motion to Strike (Filing No. 58)

As an initial matter, Dr. Mimms asks the Court to strike certain affirmative defenses filed by CVS.  Federal Rule of Civil Procedure 12(f) allows the Court to "strike from a pleading an insufficient defense or redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  The Court may, (1) act on its own, or (2) on a motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.  *Id.*  Motions to strike are generally disfavored; however, "where . . . motions to strike remove unnecessary clutter from the case, they serve to expedite, not delay." *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989).

On May 5, 2016, in reply to Dr. Mimms' Complaint, CVS filed an Amended Answer asserting thirteen affirmative defenses.[1]  Dr. Mimms argues that defenses four through eleven are legal conclusions and CVS failed to plead any short and plain statements of facts as required under Indiana law.  Affirmative defenses that are "nothing but bare bones conclusory allegations", that

---

[1] 1) Failure to state a claim for which relief can be granted, 2) qualified privilege, 3) inactionable opinions, 4) truth, 5) innocent construction rule, 6) doctrine of unclean hands, 7) public concern, 8) failure to mitigate damages, 9) doctrine of comparative fault, 10) doctrine of waiver, 11) lack of standing, 12) statutory immunity, 13) Dr. Mimms did not suffer actual damages. (Filing No. 57 8-11.)

"omit[] any short and plain statement of facts and fail[] … to allege the necessary elements of the alleged claims" should be stricken.  *Id.*

   In response, CVS argues that the Court should deny the Motion to Strike because it is untimely.  CVS filed its original Answer and affirmative defenses on November 5, 2015, which included defenses one through eleven, and also filed a Motion for Leave to File an Amended Answer on April 15, 2016.  Dr. Mimms filed his Motion to Strike on May 10, 2016, five days after CVS filed its Amended Answer.  CVS asserts that Dr. Mimms should have filed his Motion within 21 days after the original Answer, or prior to the Court granting CVS's Motion for Leave on May 5, 2016.  Under Rule 12(f), a party may move to strike within 21 days after being served with the pleading if no response is required.  Fed. R. Civ. P. 12(f)(2).

   The operative pleading in this case is the Amended Answer.  S*ee Heckler & Koch, Inc. v. German Sport Guns GmbH*, 71 F. Supp. 3d 866, 878 (S.D. Ind. 2014) (holding defendants' motion to strike plaintiffs' answer was moot where plaintiffs filed an amended answer because "amended answers, like amended complaints, supersede a previous pleading").  Accordingly, Dr. Mimms Motion to Strike is timely, because it was filed five days after service of CVS's Amended Answer, well within the 21 day requirement.

   CVS argues that the Motion to Strike fails on the merits, and should be denied because CVS satisfied the "short and plain" statement requirement and Dr. Mimms was sufficiently notified of the defenses.  "A pleading that states a claim for relief must contain… a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Defenses four through eleven are as follows:

> **Fourth Affirmative Defense**: Plaintiffs' claims are barred because truth is a complete defense to defamation claims. Any statement of fact made by CVS Pharmacy's employees, alleged to be false but true, is inactionable.

7

**Fifth Affirmative Defense:** Plaintiffs' claims are barred by the innocent construction rule.  Accordingly,  if  any alleged defamatory words are susceptible to two meanings, one defamatory and one innocent, the defamatory meaning must be rejected and the innocent meaning adopted.

**Sixth Affirmative Defense:** Plaintiffs' claims are barred by the doctrine of unclean hands.

**Seventh Affirmative Defense:** Plaintiffs' claims involve alleged statements about a matter of public concern.  Therefore, Plaintiffs may not recover presumed damages in the absence of a showing by Plaintiffs by clear  and convincing evidence that a statement was published with actual malice as defined in *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964) and *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974).

**Eighth Affirmative Defense:** To the extent Plaintiffs have failed to mitigate, minimize, or otherwise avoid any alleged losses or damages, Plaintiffs' damages claim must be reduced accordingly.

**Ninth Affirmative Defense**: Plaintiffs' claims are barred by the doctrine of comparative fault.

**Tenth Affirmative Defense:**  Plaintiffs' claims are barred by the doctrine of waiver.

**Eleventh Affirmative Defense:**   Plaintiffs' claims are barred by their lack of standing.

(Filing No. 57.)  The Court agrees with Dr. Mimms that CVS failed to allege the necessary elements for each affirmative defense and the affirmative defenses contain "conclusory allegations" and omit a short and plain statement of the facts. *See Perez v. PBI Bank, Inc*., No. 1:14- CV-01429-SEB, 2015 WL 500874, at *6 (S.D. Ind. Feb. 4, 2015) (citing *Heller,* 883 F.2d at 1295).  However, in his Motion for Partial Summary Judgment, Dr. Mimms provides details which show that sufficient discovery has taken place to afford Dr. Mimms adequate notice of the affirmative defenses. *See id*. at 8 (holding an affirmative defense must provide a plaintiff fair notice of the grounds underlying each defense).  For this reason, the Court **denies** Dr. Mimms' Motion to Strike CVS's affirmative defenses four through eleven.

8

**B.**     <u>**Defamation**</u>

Dr. Mimms moves this Court for partial summary judgment, arguing that CVS, by and through its employees, defamed him.  To maintain an action for defamation a plaintiff "must demonstrate (1) a communication with a defamatory imputation; (2) malice; (3) publication; and (4) damages." *Kelly v. Tanoos*, 865 N.E.2d 593, 596-97 (Ind. 2007). "A defamatory communication is one that 'tend[s] to harm a person's reputation by lowering the person in the community's estimation or deterring third persons from dealing or associating with the person.'" *Id.* at 596 (quoting *Rambo,* 587 N.E.2d 140, 145 (Ind.Ct.App.1992)).

Under Indiana law, defamation *per se* exists when a statement, without reference to extrinsic evidence, imputes: "(1) criminal conduct; (2) a loathsome disease; (3) misconduct in a person's trade, profession, office, or occupation; or (4) sexual misconduct." *Id.*  "If words spoken convey such a message, they are deemed obviously and naturally harmful such that separate proof of their injurious character is not needed."  *Worldwide Battery Co., LLC v. Johnson Controls, Inc.,* No. 1:06CV00602 DFHTAB, 2006 WL 3201915, at *4 (S.D. Ind. July 7, 2006).  CVS does not dispute the "publication" element and agrees that in an action for defamation *per se* a plaintiff "is entitled to presumed damages 'as a natural and probable consequence' of the *per se* defamation." *Id.* at 597 (quoting *Rambo v. Cohen,* 587 N.E.2d at 145).  Accordingly, the issues before the Court are whether (1) a communication with a defamatory imputation and (2) malice exist.

**1.**     <u>**Communication with a Defamatory Imputation**</u>

Dr. Mimms contends that CVS, through its employees, defamed him with the following statements:

- "Dr. Mimms' license has been suspended or revoked;"
- "Dr. Mimms has been arrested, and if he hasn't been, he soon would be, therefore [] find a new doctor;"

9

- "CVS no longer fills prescriptions for Dr. Mimms because Dr. Mimms has been to jail, and is a bad doctor;"
- "Dr. Mimms is under DEA investigation;" and
- "CVS doesn't fill Dr. Mimms' prescriptions or prescriptions for any other pill mills."

([Filing No. 72 at 6](.).)  Dr. Mimms asserts that he has never been arrested, his license has never been revoked or suspended, and he has no knowledge regarding a DEA investigation.  He argues that these assertions amount to defamation *per se* because they imply that he engaged in criminal conduct and was unable to freely practice medicine or write prescriptions.  Dr. Mimms contends that the statements are straightforward and leave no susceptibility to either a defamatory or nondefamatory interpretation.  "Whether a communication is defamatory or not is a question of law for the court, unless the communication is susceptible to either a defamatory or nondefamatory interpretation—in which case the matter may be submitted to the jury."  *Kelley*, 865 N.E.2d at 596 (citation omitted).  "In making the determination, the communication is to be viewed in context and given its plain and natural meaning, 'according to the idea they are calculated to convey to whom [it is] addressed.'"  *Rambo*, 587 N.E.2d at 145 (citing *Jacobs v. City of Columbus*, 454 N.E.2d 1253, 1264 (Ind. Ct. App. 1983); *Martin v. Indiana Bell Tel. Co.*, 415 N.E.2d 759 (Ind. Ct. App. 1981)).

### 2.     **MFR's Defamation Claim**

CVS first argues, and Dr. Mimms does not dispute, that MFR cannot assert a defamation claim because Dr. Mimms failed to allege that any defamatory remarks were made regarding MFR.  The Court agrees.  Accordingly, Dr. Mimms' Motion for Partial Summary Judgment is **denied** regarding his defamation claim on behalf of MFR and CVS's Motion for Summary Judgment is **granted** on this claim.  *See Lee v. Weston*, 402 N.E.2d 23, 26 (Ind. Ct. App. 1980)

(observing "defamation is personal to the plaintiff, and cannot be founded on the defamation of another").

### 3.      **Dr. Mimms' Defamation Claim**

CVS relies on *Bagwe* and *Houk*, when asserting that Dr. Mimms' defamation argument fails because the witness statements of Seeman, Petro, Mr. and Mrs. Miller, and Smith lack foundation and did not identify when the alleged statements were made and who made them. *See Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, No. 11 CV 2450, 2014 WL 4413768, at *15 (N.D. Ill. Sept. 5, 2014) (holding "the testimony of an individual who did not personally witness the alleged defamatory statement" and did "not identify the source of the [communication]" is inadmissible for lack of foundation and hearsay); *Houk v. Vill. of Oak Lawn*, No. 86 C 139, 1987 WL 7498, at *2 (N.D. Ill. Feb. 26, 1987) (foundation for affidavits "should include information as to (1) when and where the conversation occurred, (2) who was present and (3) who said what to whom").   CVS argues that Seeman, Petro, Mr. and Mrs. Miller, and Smith failed to provide names of CVS employees who made the statements and asserts that the names that they did offer were "generic first names" that Dr. Mimms has not tied to an identifiable CVS employee.   CVS also contends that the witnesses failed to identify specific dates.   CVS further asserts that a material dispute of fact exists and Dr. Mimms' partial summary judgment motion should be denied because Petro testified that an employee named Dana stated that they could not fill prescriptions written by Dr. Mimms anymore because he went to jail and is a bad doctor.   Dana Flynn, a former CVS pharmacy technician, contends that she never made that statement.

In response, Dr. Mimms argues that CVS's reliance on *Bagwe* is misplaced, because unlike the witness in *Bagwe* who did not personally witness any alleged defamatory statement and could not identify the source of the statement, Dr. Mimms' witnesses personally witnessed the statements

11

made by CVS employees.  Dr. Mimms contends that every witness identified the store location they were in when they heard the statements, some witnesses identified the exact date, and most of his witnesses identified the employees by name, while others described how the employees looked.  Dr. Mimms further argues that CVS should not be granted summary judgment because some witness cannot remember the names of CVS employees where CVS refused to cooperate during discovery in providing the names and photographs of employees at the locations where statements were made, to facilitate identifying the individuals involved by name.

In reply, CVS again relies on *Bagwe* when contending that the testimonies of Seeman, Petro, Mr. and Mrs. Miller, and Smith lack foundation, but also asserts that a material issue of disputed fact exists regarding Blanton's testimony. Blanton testified that a Caucasian CVS employee with dark hair and a lean build stated that Dr. Mimms had been under investigation and arrested for controlled substances, and if he was not arrested then Dr. Mimms would soon be arrested. CVS provided redacted time records of employees who worked on March 4, 2015, at Store #7541 (Filing No. 99-15), and contends that Michael Salazar and Ryan Durham are the only CVS employees who fit Blanton's description. Both employees submitted sworn declarations asserting that they never made the statement to Blanton.  (Filing No. 110-1; Filing No. 110-2).

The Court agrees with Dr. Mimms that CVS's reliance on *Bagwe* is misplaced.  As Dr. Mimms persuasively argues, unlike the witness in *Bagwe* who did not personally witness any alleged defamatory statement and could not identify the source of the statement, Dr. Mimms identified with specificity the statements made, where they were made, and identified or described who made the statements.

The Court finds that, when viewed in context and given its plain and natural meaning, the statements:  "Dr. Mimms' license has been suspended or revoked;" "Dr. Mimms has been arrested,

and if he hasn't been, he soon would be, therefore, [] find a new doctor;" "CVS no longer fills prescriptions for Dr. Mimms because Dr. Mimms has been to jail, and is a bad doctor;" and "Dr. Mimms is under DEA investigation" amount to communications with defamatory imputation. Even without reference to extrinsic evidence, the above statements impute that Dr. Mimms was involved in criminal conduct as well as misconduct in his profession as a physician. Accordingly, the Court determines the above statements are defamatory *per se*.

CVS next argues that the statement "find a new doctor," and referring to Dr. Mimms as a "bad doctor," a "pill pusher" and a "pill mill" are statements of opinion. "A statement is not defamatory unless it conveys a defamatory imputation *of fact*—and 'loose, figurative, or hyperbolic language [may] negate the impression that the writer was seriously maintaining' that his assertion is factual. *Brewington v. State,* 7 N.E.3d 946, 960 (Ind. 2014) (quoting *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 21 (1990)). CVS contends that the meaning of these statements are subjective and whether Dr. Mimms is a "pill mill" or "pill pusher" is susceptible to multiple meanings. In response, Dr. Mimms contends only that CVS's former employee, Anthony, after comparing Dr. Mimms to a "pill mill," explained that "pill mill physicians" are those who overwrite prescriptions to get kickbacks. Dr. Mimms argues that this statement goes beyond mere opinion and implies that he engaged in misconduct in his trade, profession, office, or occupation. A statement "categorized as [an] 'opinion' rather than [a] 'fact' is not dispositive." *McQueen v. Fayette Cty. Sch. Corp.*, 711 N.E.2d 62 (Ind. Ct. App. 1999). "[T]he dispositive question is whether a reasonable fact finder could conclude that the statement implies facts which may be proven true or false." *Id*. at 66. "[A]n idea or opinion that conveys a defamatory imputation of fact, even if couched in humor, can be actionable." *Hamilton v. Prewett*, 860 N.E.2d 1234 (Ind. Ct. App. 2007) (citations omitted).

The Court agrees with Dr. Mimms and finds the statement that Dr. Mimms is operating a "pill mill" is not "loose, figurative, or hyperbolic language" because a reasonable fact finder could conclude that the statement implies facts which may be proven true or false.  Anthony not only defined "pill mill," but, in its Cross-Motion for Summary Judgment, CVS contends that because Dr. Mimms is a high prescriber of controlled substances, a CVS employee has ample reason to consider Dr. Mimms a "pill mill" or "pill pusher."  Therefore, the Court finds that the statement by Anthony that, "CVS doesn't fill Dr. Mimms' prescriptions or prescriptions for any other 'pill mills,'" is not a mere opinion.

With respect to the statements that Dr. Mimms is a "bad doctor" or "shady doctor" and his patient needed to "find a new doctor," the Court concludes, and Dr. Mimms does not dispute, that these phrases are subjective, "unverifiable statements of opinion." *See Eversole v. Spurlino Materials of Indianapolis, LLC*, 804 F. Supp. 2d 922, 937 (S.D. Ind. 2011).

CVS lastly asserts that Dr. Mimms' defamation claim fails because the statements regarding the DEA investigating Dr. Mimms are true.  Under Indiana law, "[t]rue statements never give rise to liability for defamation." *N. Indiana Pub. Serv. Co. v. Dabagia*, 721 N.E.2d 294, 301 (Ind. Ct. App. 1999) (citing *Conwell v. Beatty,* 667 N.E.2d 768, 774 (Ind.Ct.App.1996)).  CVS presents testimony from CVS employees that DEA and Indiana Attorney General agents visited CVS stores in late 2013 seeking records relating to Dr. Mimms and his patients.  CVS contends that the DEA and Indiana Attorney General agents made repeated visits to CVS stores and informed CVS that they were looking into Dr. Mimms' prescribing practices.  CVS further argues that the DEA's ongoing review, monitoring, and inquiries relating to Dr. Mimms' practices, and repeated requests to produce documents from CVS and RAI, Dr. Mimms' former employer, make it clear that Dr. Mimms was under investigation during the relevant time period.

14

In response, Dr. Mimms contends that CVS failed to properly present evidence regarding the DEA and Indiana Attorney General agents' visits to CVS in 2013, and asserts that the DEA and Indiana Attorney General's Office never issued subpoenas regarding Dr. Mimms' prescribing practices.  Dr. Mimms asserts that the DEA and Indiana Attorney General's Office issued subpoenas for RAI's patient files, and at that time he was no longer an employee at RAI.  Dr. Mimms also states that no regulatory or governmental agency provided documentation that he has ever been arrested, his medical license was revoked or suspended, or that he operates a pill mill.  Dr. Mimms contends that these statements are not true and there is no justification for them.

The Court finds that CVS has not presented sufficient evidence that the DEA and Indiana Attorney General's Office were investigating Dr. Mimms.  CVS contends that agents visited CVS stores in late 2013 seeking records related to Dr. Mimms and his patients, however, CVS produced no evidence or records that the agents subpoenaed and received any records from CVS relating to Dr. Mimms and his patients during the relevant time period.  Additionally, the subpoenas that CVS produced as evidence are insufficient because the DEA and Indiana Attorney General's Office requested records and information from RAI, well after Dr. Mimms stopped working there, and the subpoenas did not mention Dr. Mimms.  (Filing No. 77-32; Filing No. 77-33.)  Accordingly, because there is not sufficient evidence that Dr. Mimms was under DEA investigation during the alleged time period, CVS's affirmative defense of truth fails and summary judgment is not warranted.

### 4.   **Malice**

Dr. Mimms does not contest that he is a "public figure," which requires that he prove CVS acted with actual malice.  Under Indiana law, "actual malice" means a defendant knew that a

defamatory statement was false or was recklessly indifferent to whether it was true or false.

*Desnick v. Am. Broad. Companies, Inc.*, 233 F.3d 514, 517 (7th Cir. 2000).

> "Reckless indifference" denotes [] knowledge by the defendant that there was a high risk of harm to the plaintiff coupled with a failure to take any feasible measure to counter the risk, either by investigating further to see whether there really is a risk and how serious it is or by desisting from the risky activity.

*Id*.  Dr. Mimms contends that CVS, through its employees, acted with malice when they continued to publish false statements about his ability to freely practice medicine and falsely stating that Dr. Mimms had been or would be arrested.  Dr. Mimms asserts that information regarding a suspended license or an arrest are not only available to the public, but CVS has sufficient resources to investigate and determine if the statements are true.  Dr. Mimms argues that CVS's actions amounted to "reckless indifference."

In its Cross Motion for Summary Judgment, CVS relies on *Brewington* when contending that Dr. Mimms failed to prove that any CVS employee "entertained serious doubts as to the truth of [the allegedly defamatory] statements" or had a "high degree of awareness of their probable falsity" when making the statements.  *See Brewington*, 7 N.E.3d at 960 ("actual malice does not hinge on whether [d]efendant's claims are true or false, nor even whether they are objectively reasonable… [i]nstead, it is a matter of his subjective sincerity—whether he 'in fact entertained serious doubts as to the truth of' those statements…, or had a 'high degree, of awareness of their probable falsity'").  CVS argues that the DEA and Indiana Attorney General agents repeatedly visited CVS stores seeking information about Dr. Mimms and the employees were aware of the visits.  CVS also contends that Dr. Mimms is a high prescriber of controlled substances and, because of this, CVS employees had great reason to believe that Dr. Mimms was under DEA investigation, a "pill mill," or a "pill pusher."  CVS further contends that the employees did not

act with malice, or bore any ill will toward Dr. Mimms, when stating that "Dr. Mimms has been…or will be arrested."

In response, Dr. Mimms designated evidence showing that CVS published specific protocols to its stores and pharmacy employees for dealing with customers and refusing to fill prescriptions. CVS protocol CVS00186 instructs that pharmacists must deliver information directly to the patient and communicate the reason why they are refusing to fill the prescription. (Filing No. 140 at 25).  The protocol provides examples of what pharmacists should explain when refusing to fill a prescription, such as: "I am not comfortable filling this prescription" or "due to company guidelines, I am unable to fill your prescription." CVS protocols CVS00186, as well as CVS00011, additionally states as follows:

> **Under no circumstances are you to make any disparaging comments about the customer's prescriber**. Examples of disparaging comments include, but are not limited to the following:
>
> - The prescriber is under investigation by the DEA or local police
> - The prescriber is under investigation by CVS
> - The prescriber is operating a pill mill
> - The prescriber is going to lose his or her license
> - The prescriber is going to jail/should go to jail/may go to jail
> - The prescriber is a criminal, about to be arrested, should be arrested, etc….

CVS00011 and CVS00186 (emphasis in original).  (Filing No. 140 at 25-26).  CVS pharmacist, Christian Krenk confirmed being familiar with the protocol, that all pharmacists were familiar with the protocol, and conceded that the above statements are "serious statements to make and they need to be founded in truth." (Filing No. 140 at 21; Filing No. 113-14 at 6-7).

The Court concludes, although CVS contends that its employees had great reason to believe the statements, Dr. Mimms presented sufficient evidence to raise a question of fact regarding whether CVS employees acted with actual malice when stating:  Dr. Mimms is a "pill mill" and a

17

"pill pusher," "Dr. Mimms' is under investigation by the DEA," and "Dr. Mimms has been…or will be arrested" because CVS's own policy warns against making those "disparaging comments." The Court also finds, and CVS does not dispute, that the statement "Dr. Mimms' license has been suspended or revoked" was made with actual malice.  Accordingly, the parties' Cross-Motions for Summary Judgment regarding Dr. Mimms' defamation claim is **granted in part and denied in part**.

### 5. <u>Qualified Privilege</u>

Finally, CVS contends that all of the statements are protected by a qualified privilege, therefore, Dr. Mimms' defamation claim fails.  A qualified privilege rebuts the element of malice when the alleged defamatory remarks are "communications made in good faith on any subject matter in which the party making the communication has an interest or in reference to which he has a duty, either public or private, either legal, moral, or social, if made to a person having a corresponding interest or duty."  *Bals v. Verduzco*, 600 N.E.2d 1353, 1356 (Ind. 1992) (quoting *Chambers v. American Trans Air, Inc.,* 577 N.E.2d 612, 615 (Ind. App. Ct. 1991)).  "The protection arises from the need for full and unrestricted communication regarding matters on which the parties have a common interest or duty."  *Boydston v. Chrysler Credit Corp*., 511 N.E.2d 318, 320 (Ind. Ct. App. 1987).  "The scope of the qualified privilege is not amenable to a fixed or precise definition and must adapt to current societal interest and particular situations."  *Williams v. Tharp*, 914 N.E.2d 756, 765 (Ind. 2009).  Absent a factual dispute, whether a statement is protected by a qualified privilege is a question of law.  *Bals*, 600 N.E.2d at 1356 (citing *Lawson v. Howmet Aluminum Corp.*, 449 N.E.2d 1172, 1175 (Ind. Ct. App. 1983)).

CVS asserts that its employees had a duty to warn patients and withhold prescriptions because pharmacists are required to "'exercise [their] professional judgment in the best interests

of the patient's health while engaging in the practice of pharmacy.'" *See Kolozsvari v. Doe*, 943 N.E.2d 823, 827 (Ind. Ct. App. 2011) (quoting Ind. Code § 25-26-13-16). (Ind. 1994)). CVS contends that a pharmacist's duty of care is based on the fact that "[i]t is a matter of common understanding that customers rely upon pharmacists for [their] expertise" regarding the dispensing of prescription drugs. *See Hooks SuperX, Inc. v. McLaughlin*, 642 N.E.2d 514, 517 (Ind. 1994). CVS relies on *Lefrock* when arguing that the statements made by its employees regarding Dr. Mimms is subject to qualified privilege because CVS and its customers share a common interest regarding the customers' health, treatment, and their doctor's prescribing practices. *See Lefrock v. Walgreens Co.*, 77 F. Supp. 3d 1199, 1202 (M.D. Fla. 2015) (statements made by Walgreens' pharmacists to customers about a prescribing doctor's medical reputation were privileged). CVS asserts that Dr. Mimms' witnesses agreed that patients share a relationship with their pharmacists and seek advice and counseling in furtherance of their medical treatment. CVS also contends that the witnesses agreed that whether a prescribing physician was engaged in illegal or unethical behavior is information they want to know and is relevant to their medical treatment.

CVS further argues that the remaining requirements under qualified immunity are met because each statement was made solely to the customer, or their designated agent for filling their prescriptions, when the customer presented a prescription or asked a question regarding Dr. Mimms and controlled substances. CVS contends that the statements were limited to the scope of Dr. Mimms and his prescriptions practices and there is no evidence of bad faith because the evidence demonstrates that its employees had ample reason to believe that their statements were true.

In response, Dr. Mimms contends that CVS's argument fails because the law that CVS relies on regards only licensed pharmacists. Dr. Mimms asserts that qualified immunity does not

apply because CVS's employees were not pharmacists, but rather, pharmacy technicians.  Dr. Mimms argues that pharmacy technicians do not have the same duties and responsibilities as pharmacists and are not entitled to the protections of a qualified privilege.  *See* Ind. Code Ann. § 25-26-19-2 (a "pharmacy technician is an individual who:  (1) works under the direct supervision of a pharmacist licensed under this article; and (2) performs duties to assist a pharmacist in  activities that do not require the professional judgment of a pharmacist").  Dr. Mimms further argues that the statutes and cases cited by CVS do not stand for the proposition that "pharmacy employees share a common interest with its customers regarding the customers' health, treatment, and prescribers."  ([Filing No. 95 at 16](#)).  Dr. Mimms contends that *Kolozsvari* recognized that pharmacists, rather than all pharmacy employees, owe a duty of reasonable care to customers, but did not determine what that duty entails.  Dr. Mimms acknowledges that *Lefrock* is factually similar to the instant case, but argues that *Lefrock* is inapplicable because the court determined that qualified immunity applied where pharmacists had a state law duty to "give general advice" to its customers.  Dr. Mimms contends that no Indiana statute or case law exist that creates a similar duty on pharmacists.

The Court finds that qualified privilege does not apply to pharmacy technicians, because as Dr. Mimms persuasively argues, Indiana laws regarding licensed pharmacist and pharmacy technicians are different.  Under Indiana law, pharmacy technicians are prohibited from providing certain advice or consultation to patients and from performing any activity required by law to be performed only by a pharmacist.  Ind. Code § 25-26-19-8.  The case law and statutes that CVS relies on refers only to licensed pharmacists.  In addition, the statements at issue were particularly disparaging and went beyond the scope of the purposes for which qualified privilege exists.  Accordingly, CVS is not entitled to summary judgment motion on this affirmative defense.

**C.**     **Tortious Interference with Contractual Relationship and Business Relationship**

CVS also moves for summary judgment on Dr. Mimms' tortious interference claims.  CVS asserts that these claims fail as a matter of law because CVS did not cause any breach of contract between Dr. Mimms and his patients and CVS did not interfere with any business relationships between Dr. Mimms and his patients.

A plaintiff alleging tortious interference with a contractual relationship must establish five elements:  (1) the existence of a valid and enforceable contract; (2) the defendant's knowledge of the existence of the contract; (3) the defendant's intentional inducement of the breach of the contract; (4) the absence of justification; and (5) damages resulting from the defendant's wrongful inducement of the breach.  *Allison v. Union Hosp., Inc.,* 883 N.E.2d 113, 118 (Ind. Ct. App. 2008).

A cause of action for tortious interference with a business relationship is the same as that for tortious interference with a contract, "except there is no requirement that a valid contract exists."  *Furno v. Citizens Insurance Company of America,* 590 N.E.2d 1137, 1140 (Ind. App. 1992).  Tortious interference with a business relationship claim requires nearly the identical elements, except "the plaintiff must also show the existence of a protectable business relationship rather than a contract."  *Rice v. Hulsey*, 829 N.E.2d 87, 91 (Ind. Ct. App. 2005).  It also "requires some independent illegal action."  *Id. (quoting Brazauskas v. Fort Wayne–South Bend Diocese, Inc.,* 796 N.E.2d 286, 291 (Ind. 2003).

CVS acknowledges that Dr. Mimms maintains an agreement amongst his patients that limits his patients to filling their prescription at CVS stores.  Dr. Mimms explained that it makes it easier to track, builds relationships with pharmacists, and prevents the appearance that patients are pharmacy hopping.  (Filing No. 75 at 37).  CVS, however, argues that despite its refusal to fill Dr. Mimms' prescriptions, the agreement between Dr. Mimms and his patients was not breached,

21

nor did CVS interfere with a business relationship, because Dr. Mimms did not lose a single patient.  CVS contends that, even if its conduct resulted in a breach of contract or interference with a business relationship, it was justified in making the statements and Dr. Mimms did not provide evidence that he suffered any damages as a result of CVS's actions.

In response to CVS's Motion for Summary Judgment, Dr. Mimms does not address the tortious interference claims.  Dr. Mimms does not put forward any evidence that CVS interfered with any contracts between him and his patients or his business relationship, nor does he dispute the above assertions made by CVS.  Without more information the Court cannot reasonably find that CVS interfered with Dr. Mimms' contracts or business relationships.  Accordingly, summary judgment is **granted** to CVS with respect to Dr. Mimms' claims of tortious interference with contractual and business relationships.  *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver," and "silence leaves us to conclude" a concession.); *Myers v. Thoman*, 2010 U.S. Dist. LEXIS 107502, at *11 (S.D. Ind. Oct. 6, 2010) ("The Seventh Circuit has clearly held that a party who fails to respond to points made . . . concedes those points.").

## D.   Motion to Supplement Summary Judgment Record (Filing No. 130)

If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may give an opportunity to properly support or address the fact.  Fed. Rule Civil Procedure 56-1(e)(1).  CVS seeks leave, pursuant to local rule 56-1, to supplement its Motion for Summary Judgment, asserting that after filing and briefing its summary judgment motion, CVS received additional documents establishing that Dr. Mimms was under investigation.  CVS contends that the supplement includes: (1) publicly-available transcripts from a criminal trial proceeding of one of three former patients of Dr. Mimms

identified on a subpoena CVS received from the DEA on July 8, 2016; (2) publicly-available certified copies of the death certificates of the remaining two former patients identified on the DEA subpoena; and (3) a letter dated August 8, 2016, from the Department of Health and Human Services to CVS, requesting certain documents "[p]ursuant to an official federal criminal investigation into Dr. Anthony Mimms' prescribing methods . . ." (Filing No. 130).  CVS argues that these documents are each highly relevant as they—individually and cumulatively—establish that in 2014, at the time the statements by CVS employees occurred, Dr. Mimms was "under DEA investigation."  CVS contends that, on February 25, 2014, then-Health and Human Services Agent, David White, testified that he was conducting a criminal investigation into Dr. Mimms' practice in December 2012.  Agent White further testified that he referred the investigation to the DEA for further proceedings.  CVS argues that this testimony demonstrates, unequivocally, that Dr. Mimms was "under investigation" and "under DEA investigation."

In response, Dr. Mimms contends that Local Rule 56-1 does not allow for belated supplementation, rather, the rule lays out strict filing deadlines.  Dr. Mimms argues that CVS's Motion to Supplement is well outside the required discovery time period and the transcript that CVS seeks to admit is irrelevant and would inflame and mislead a jury.  Dr. Mimms states that if the Court admits the transcript he would suffer prejudice because he lacked the opportunity to cross-examine the witnesses involved.  Dr. Mimms also contends that the transcript concerns the testimony of a Health and Human Service investigation rather than a DEA investigation.  Dr. Mimms next argues that the letter CVS received is well outside the relevant time frame presented by the facts, lacks foundation, is inadmissible hearsay, and does not relate to a DEA investigation.  Lastly, Dr. Mimms asserts that the death certifications are inadmissible because they lack foundation.

The Cross-Motions for Summary Judgment have been ripe for ruling since August 2016 and the inclusion of the proposed supplements would require additional briefing, possible delay and prejudice to Dr. Mimms.  In addition, the Court finds that the death certificates and the Health and Human Services letter that CVS received on August 8, 2016 are not relevant regarding whether CVS defamed Dr. Mimms from late 2013 to 2015 or CVS's defense of truth.  More importantly, after reviewing the evidence, despite the criminal trial of Dr. Mimms' former patient occurring in 2014, the Court finds the transcript and testimony of Agent White insufficient to establish that Dr. Mimms was being investigated during the relevant time period.  Agent White testified that he investigated Dr. Mimms in late 2012, but did not conduct further investigation thereafter.  (Filing No. 131-1 at 31, 34, 49.)  Also, although, Agent White testified that he referred the investigation to the DEA for further proceedings, there is no evidence that the DEA actually investigated Dr. Mimms during the time alleged in the Complaint.  The subpoenas that CVS produced from the DEA and the Indiana Attorney General's Office are addressed to Dr. Mimms' former employer, RAI.  (Filing No. 77-32; Filing No. 77-33.)  Not only do the subpoenas list more than Dr. Mimms' three purported former patients, but the subpoenas were issued well after Dr. Mimms resigned from working at RAI.[2]  (Filing No. 77-35.)  Accordingly, because the proffered supplements are untimely, highly disputed and of questionable relevance, CVS's Motion to Supplement the Summary Judgment Record is **denied**.

**E.  Motion to Amend Witness and Exhibit Lists.**

Finally, CVS seeks to amend its trial exhibit list to include: (1) a subpoena and documents issued by the DEA and served upon CVS on July 8, 2016, seeking the production of documents

---

[2] Dr. Mimms resigned on November 5, 2013 and the subpoenas from the DEA and Indiana Attorney General's Office were issued on June 17, 2014 and June 18, 2014, respectively.

relating to three former patients of Dr. Mimms, (2) transcript excerpts from the criminal trial proceedings of one of Dr. Mimms' former patients, (3) death certificates of the remaining two former patients identified on the DEA subpoena, and (4) a letter dated August 8, 2016 from the Department of Health and Human Services.  CVS further seeks leave to amend its trial witness list to include Special Agents David White and Connie Murray to testify to the existence of criminal investigations regarding Dr. Mimms.

Dr. Mimms objects to the amended exhibits and witnesses because their disclosure is untimely and irrelevant.  The standard for exclusion of a witness based on late disclosure is the totality of the circumstances. In determining whether the late disclosure is harmless, the Court considers:  (1) prejudice or surprise to the party against whom the evidence is offered, (2) ability of the party to cure the prejudice, (3) the likelihood of disruption of the trial, and (4) bad faith and willfulness involved in not disclosing at an earlier date. *See Tribble v. Evangelides*, 670 F.3d 753, 760 (7th Cir. 2012).  CVS has adequately explained the late disclosure of the two witnesses and the exhibits, and there is no allegation of bad faith. The trial on this matter is nearly three months away, and CVS can be ordered to pay the costs for depositions of the witnesses so as to cure any prejudice to Dr. Mimms.  The question of whether the proposed exhibits and witnesses are relevant to any issues remaining for trial is one to be determined on another day. Accordingly, CVS's Motion to Amend its trial witness and exhibit lists is **granted.** CVS shall make its newly discovered witnesses available for deposition and shall be responsible for the reasonable expenses associated with said depositions.

## IV.   CONCLUSION

For the reasons stated above, Dr. Mimms' Motion for Partial Summary Judgment (Filing No. 71), and CVS's Motion for Summary Judgment (Filing No. 74), **are GRANTED in part and**

**DENIED in part.**  Dr. Mimms' Motion to Strike (Filing No. 58.) is **DENIED.**  CVS's Motion for Leave to Amend its Witness and Exhibit Lists (Filing No. 127) is **GRANTED** and CVS's Motion to Supplement Summary Judgment Record (Filing No. 130) is **DENIED**.

The Court grants CVS's Motion for Summary Judgment with respect to Dr. Mimms' claims for tortious interference of contractual and business relationships.

The Court finds that the statement "Dr. Mimms' license has been suspended or revoked" is defamatory *per se*.  Accordingly, Dr. Mimms' Motion for Partial Summary Judgment regarding this statement is granted and CVS's Motion for Summary Judgment is denied.

The Court finds that the following statements are defamatory: "Dr. Mimms is under DEA investigation," "CVS doesn't fill Dr. Mimms' prescriptions or prescriptions for any other pill mills," "CVS no longer fills prescriptions for Dr. Mimms because Dr. Mimms has been to jail," and "Dr. Mimms has been arrested, and if he hasn't been, he soon would be."  However, a genuine issue of material fact remains whether any of the defamatory statements were made with malice. In addition, a genuine issue of material fact remains regarding Petro's testimony that a CVS employee named Dana made the statement, and Blanton's testimony that a Caucasian employee with dark hair and lean build made the defamatory statement. Accordingly, the parties' Cross-Motions for Summary Judgment on these statements are denied. The issues remaining for trial are the defamation claim with respect to Petro's and Blanton's testimony, whether the defamatory statements were made with malice, and Dr. Mimms' damages.

    **SO ORDERED.**

Date: 1/3/2017

_____

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Jason D. May
jason.may@jasonmaylaw.com

Jonathan W. Garlough
FOLEY & LARDNER LLP
jgarlough@foley.com

Robert H. Griffith
FOLEY & LARDNER LLP
rgriffith@foley.com

Amanda Elizabeth Fiorini
INDIANA ATTORNEY GENERAL
Amanda.Fiorini@atg.in.gov

Dennis E. Mullen
INDIANA ATTORNEY GENERAL
dennis.mullen@atg.in.gov